(31 Misc. Rep. 529.)

## ROOSA v. HARRINGTON et al.

## CORNELL v. ROOSA.

### (Supreme Court, Trial Term, Albany County. May, 1900.)

1. WILLS—DEVISE—TRUST FUND—CONTINGENT REMAINDER.

Under 1 Rev. St. p. 723, § 13, providing that a future estate is contingent while the persons to whom, or the event on which, it is limited to take effect remains uncertain, where the testator devised one-third of his estate to executors in trust to pay the income to C., and at their election, and in case they did not, and C. should die without issue, then to divide the principal equally between W. and S., the devises to W. and S. were contingent remainders.

2. SAME—EXPECTANT ESTATE—VESTED INTEREST—INTESTACY.

1 Rev. St. p. 723, § 7, defines an estate in expectancy as one in which the right to possession is postponed to a future time, and section 35 makes expectant estates descendible and devisable in the same manner as estates in possession. Section 41 declares that, where an expectant estate is created by devise, the death of the testator shall be deemed the time of the creation of the estate. A testator devised one-third of his estate to his executors in trust to pay the income to C. during his life, and also the principal, at their election; and in case they did not, and C. should die without issue, then, on the death of C., to divide the principal equally between W. and S. Held that, in the absence of an election to pay the principal to C., the contingent remainders devised to W. and S. became vested interests on the death of the testator, which descended on the death of W. and S. to their heirs; and hence there was no intestacy as to the trust fund, and the testator's widow could not share in its distribution on the death of C.

3. SAME—TRUST FUND—DEVISE BY BENEFICIARY—RIGHT OF DEVISEE.

Under Rev. St. p. 723, § 7, defining an estate in expectancy as one in which the right of possession is postponed to a future time; and section 35, which makes expectant estates descendible and devisable; and section 41, which declares the time of the creation of an expectant estate shall be the death of the testator,—a testator devised one-third of his estate to his executors in trust to pay the income to his grandson, C., and the principal also, if they elected to do so, and in case they did not, and C. should die without issue, then to divide the principal equally between the testator's

son W. and his daughter S. *Held*, in the absence of an election to pay the principal to C., and W. died after testator without widow or children, and S. died after testator, and devised her estate to her three children, that a sole devisee under C.'s will was entitled to the interest which C. would have received as the heir of W.

Action by De Witt Roosa, as trustee, against Walter C. Harrington and others, and an action by Louisa Cornell against De Witt Roosa, for the construction of the will of Latham Cornell, deceased, and an accounting of his estate. The two actions were tried together. Will construed, and distribution ordered.

Howard Chipp, for De Witt Roosa, trustee.

Eugene E. Sheldon, for Louisa Cornell.

Foster, Kelly & Isenbergh, for W. C. Harrington, Maria L. Adams, W. H. Harrington, and Sarah E. Kelly.

Sidney W. Petrie, for Blanche L. Strong, W. C. Strong, and Rae Latham Strong.

Bernard & Van Wagonen, for Charles W. Crispell.

Linson & Van Buren, for Calvin Rae Smith.

Benjamin M. Fowler, for the American Surety Company.

CHESTER, J. The first action is one brought by the trustee, under the will of Latham Cornell, for an accounting, and for a distribution of the trust funds in his hands to the parties entitled thereto. The second action is one brought by the widow of the testator, asking for a judicial construction of his will, and for the payment to her of one-third of the personalty of the trust estate, on the theory that her husband died intestate as to the principal of such trust fund. Both actions involve the same questions as to the construction of the will, and have been tried together.

The testator, Latham Cornell, died in 1876, leaving a will and codicil, each dated April 27, 1871. By the first item of his will he appointed his son William W. Cornell and his grandson Latham C. Strong executors, and gave them a power of sale of his real estate. He made a provision for his wife in the second item, as follows:

"(2) I hereby give and bequeath to my wife, Louisa Cornell, and to her heirs and assigns, forever, the sum of $20,000.00 (twenty thousand dollars), to be paid to her by my said executors within one year after my death, and to be in full, if she elects to take the same, of all claim, and all right, title, and interest of dower, on her part, in and to my estate, and every part thereof; but this bequest to be void in case she shall decline to receive the same in lieu of, and to relinquish such right of, dower."

By the third item he bequeathed to his executors the sum of $15,000, to be invested by them, and to pay the income thereof to his grandson Latham Cornell Strong until he shall arrive at the age of 35 years, and then to pay the principal sum, less expenses and commissions, to said grandson; and, in case of the death of said grandson before arriving at that age, the said sum of $15,000 is bequeathed to his son William W. Cornell, and his daughter Sarah E. Harrington, and his grandson Charles W. Cornell, the survivor or survivors of them, their or his or her heirs and assigns, forever, to be divided equally between the said William, Sarah, and Charles, share and share alike. The fourth item is as follows:

"(4) After the payment of my just debts and funeral charges and expenses of a suitable monument on my lot in Oakwood Cemetery, and the necessary improvements thereon, if the same should not be done before my death, I hereby give, devise, and bequeath all the rest and residue of the property, of any kind and description, wherever situated, of which I may die seised or possessed, or to which I have or may have any claim, to my said son William W. Cornell, to my said daughter Sarah E. Harrington, and to my said grandson Charles W. Cornell, and to their heirs and assigns, forever, to be divided equally, share and share alike, between the said William, Sarah, and Charles, subject to the provisions hereinafter mentioned, to wit: The share of the said Sarah to be held and enjoyed by her for her sole and separate use, and not in any way to be subject to the interference, control, charge, or expenses of her husband; and from the share of the said Charles my said executors, or the survivor of them, shall deduct the amount of such advances as I have made or shall hereafter make to him as shall appear by my books, or his obligations held by me, whether the statute of limitations shall have run up to such amount, or any part thereof, or not, and the amount so deducted shall be divided equally between the said William and Sarah."

The codicil contains two items. In the first the provision for the benefit of his grandson Latham C. Strong is changed, and the executors authorized to pay him the principal of the legacy given to him by the third item of the will on his arrival at the age of 30 years, or, if he should be married before that time, in their discretion to pay the same when he should be married. Then follows the provision which is the foundation of the controversy, which it is the purpose of these actions to have determined, viz.:

"(2) Instead of the legacy given to my said grandson Charles W. Cornell in and by the fourth section of said will, I hereby give, devise, and bequeath the share of my estate thereby devised and bequeathed to the said Charles W. Cornell to my said executors, or the survivor of them, in trust to invest the same as in said will mentioned, and to pay over the interest or income thereof semiannually to the said Charles W. Cornell during his natural life, or, if in their discretion they should at any time think it wise and for the best interest of said Charles so to do, to pay to him such principal; and in case they should not pay to him said principal, and the said Charles should die without leaving issue surviving him, then to pay said principal on his death to my said son William W. Cornell and my said daughter Sarah E. Harrington, to be divided equally between them, but, in case the said Charles shall die leaving issue surviving him, then said principal shall go and belong to such issue."

The executors administered upon the estate, and paid the legacy to the widow and to the grandson Latham Cornell Strong, and divided the residue into three shares, paying one to William W. Cornell, one to Sarah E. Harrington, and the third was set apart as the trust fund for the benefit of the grandson Charles W. Cornell. It is conceded that the estate has been fully administered upon, leaving only the trust fund as the subject of the present adjudication. This consists of both real and personal property, but it is chiefly personal.

Upon the death of the survivor of the two executors named in the will, the plaintiff in the first of the above-entitled actions was appointed, and has since acted as testamentary trustee under the will.

The testator left, him surviving, his widow, Louisa Cornell; the plaintiff in the second action, his son William W. Cornell; his daughter Sarah E. Harrington; and his grandson Charles W. Cornell, who was a son of a daughter of the testator who predeceased him. The son William W. Cornell died in 1894 intestate, leaving no widow and no children. The daughter Sarah E. Harrington died in 1882,

leaving a will, and leaving three children by a second marriage, Walter C. Harrington, Sarah E. Kelly, and Maria L. Adams, all of whom are parties to these actions. She also left two grandchildren, William C. Strong and Rae Latham Strong, who are also parties; they being the sons of Latham C. Strong, who died in 1879, and who was a son of Sarah E. Harrington by her first marriage. By the will of Sarah E. Harrington she makes no provision for the benefit of her grandchildren William C. and Rae L. Strong, but gives all of her estate to her three children by her second marriage. The grandson Charles W. Cornell died in 1898, leaving no widow or issue, although he had been married, and had had one child, who died in infancy, before the death of his grandfather, the testator. He left a will giving his entire estate to Charles W. Crispell, and making him his executor, and he is a party to these actions. The principal of the trust fund under the will was never paid over to Charles W. Cornell, under the discretionary power so to do contained in the will.

The fundamental question presented for determination under this will is whether the gift over to the son William W. Cornell and the daughter Sarah E. Harrington, upon the termination of the trust estate for the benefit of Charles W. Cornell, is a gift to take effect in the future, or did it vest in the son and daughter at the death of the testator. If it so vested, there is no intestacy as to this trust fund, and the widow can take no part of it, and the fact that the son and daughter each died before the termination of the trust estate will not prevent the share of the deceased son from passing to his heirs at law and next of kin, nor will it prevent the share of the deceased daughter under her will. On the other hand, if there was no vesting in the son and daughter at the date of the death of the testator, then there was an intestacy in relation to this fund, and it would go to those entitled thereto at the death of the grandson Charles W. Cornell.

At the date of the testator's death, his son William W. Cornell, his daughter Sarah E. Harrington, and his grandson Charles W. Cornell were his sole heirs at law, and, with his wife, were his only next of kin. By reference to the provisions of the will above quoted, it will be seen that the testator, after making a provision for his wife, and giving a legacy to Latham C. Strong, gave all the residue of his property to his son William W., his daughter Sarah E., and his grandson Charles W., to be divided equally between them. But in the codicil the share given by the will absolutely to Charles is changed, and given in trust for his benefit, during life, with discretion to the executors to pay him the principal; and in the event of their failure so to do, and of his dying without leaving issue surviving him, "then to pay said principal on his death to my said son William W. Cornell and my said daughter Sarah E. Harrington, to be divided equally between them, but, in case the said Charles shall die leaving issue surviving him, then said principal shall go and belong to such issue."

In seeking the testator's intent, the will and codicil must be construed together. Taking the provisions above referred to, relating to the residue mentioned in the will, and the remainder, after the

termination of the trust, mentioned in the codicil, it is entirely clear that he intended to effectually dispose of his entire estate. It is equally plain that he intended to make an equal division of the residue of his estate among his three chief beneficiaries or lines of descendants, subject to the limitations put upon the share of Charles by the provisions of the codicil creating the trust. He also intended, in the event of Charles dying without issue and not having received the principal, that then the share set apart for his benefit should still be kept in the line of his blood, and go to the other two beneficiaries, William W. and Sarah E., whom he mentioned by name as the persons entitled to take on the happening of the contingencies which would terminate the estate of Charles.

The testator, by the use of the words "then to pay," intended to indicate the time when the right of possession should begin, and not that the vesting should be postponed until that time. Sage v. Wheeler, 3 App. Div. 38, 37 N. Y. Supp. 1107, affirmed 158 N. Y. 679, 52 N. E. 1126. If his intent was as above indicated, effect must be given to it, if that can be done without violating established rules of law. Authorities need not be cited in support of the well-settled general propositions that in the construction of wills the law favors vesting and disfavors intestacy. The contention against a vesting in William W. Cornell and Sarah E. Harrington is based upon the fact that they both died before Charles W. Cornell, the cestui que trust, and that, therefore, the executors could not "pay" over to them the principal of the trust fund, and divide it equally between them on his death, as directed by the codicil. The rule is invoked that, where the only gift is found in a direction to the trustees to pay upon the occurrence of a contingency which may or may not happen, futurity must be considered as of the substance of the gift, and that, therefore, there is no vesting of the gift until the contingency has happened. This rule, however, has many exceptions, and must yield to the intention of the testator as indicated by the whole will. In re Brown, 154 N. Y. 313, 48 N. E. 537; In re Young, 145 N. Y. 535, 538, 40 N. E. 226; Bowditch v. Ayrault, 138 N. Y. 222, 33 N. E. 1067; In re Tienken, 131 N. Y. 391, 409, 30 N. E. 109; Goebel v. Wolf, 113 N. Y. 405, 412, 21 N. E. 388. And the rule has been most generally applied in cases where the gift is to children or grandchildren as a class,—where the beneficiaries as to their personalty and number can only be definitely ascertained at a future time, and the court should hesitate to apply it in a case like this, where the gift is to children by name. Carr v. Smith, 25 App. Div. 214, 49 N. Y. Supp. 351; Shangle v. Hallock, 6 App. Div. 55, 39 N. Y. Supp. 619. It is another rule that, if the direction to pay at a future time be for the accommodation of the estate, or to enable it to meet another burden first imposed upon it, which appears to be the case here, the vesting of the gift is not postponed, but takes place as of the date of the testator's death. In re Young, 78 Hun, 521, 29 N. Y. Supp. 403, affirmed 145 N. Y. 535, 40 N. E. 226; Loder v. Hatfield, 71 N. Y. 92.

I think, however, that the word "pay" in the codicil was used unadvisedly and inadvertently; for in the same sentence, where the executors, in the event of their not paying the principal over to

Charles, are directed to "pay" it over to William W. and Sarah E., it is said that, in case Charles shall die leaving issue surviving him, then said principal "shall go and belong" to such issue. The intent is clearly that, if Charles should die leaving issue, the principal should go and belong to such issue; but, if he should die without leaving issue, then it should go and belong to William W. and Sarah E., to be equally divided between them. There is nothing apparent to indicate that the testator intended that the word "pay" should have any other effect in carrying the estate to the son and daughter, in the one contingency, than the words "go and belong" in carrying the estate to the issue of Charles, in the other contingency.

When examining this will in connection with the following references to the Revised Statutes, all of which have been carried into the real property law without substantial change, I think it is clear that the interests of William W. and Sarah E. were vested interests, which were descendible and devisable. These interests were estates in expectancy, because the right to the possession was postponed to a future period. 1 Rev. St. p. 723, §§ 7–9. And the estates, being dependent upon the precedent estate for the benefit of Charles W. Cornell, were estates in remainder. Id. p. 723, § 11. And, being dependent on the contingencies of nonpayment of the principal to Charles and his death without issue, they were contingent remainders. Id. p. 723, § 13. Expectant estates are descendible, devisable, and alienable in the same manner as estates in possession. Id. p. 725, § 35. And, where an expectant estate is created by devise, the death of the testator shall be deemed the time of the creation of the estate. Id. p. 726, § 41. The same rules prescribed in relation to future estates in lands govern limitations of future or contingent interests in personal property. Id. p. 773, § 2; Pers. Prop. Law, § 2. I think these future estates vested in William W. and Sarah E. at the death of the testator, notwithstanding my conclusion that their interests were contingent remainders. "Future estates" are defined in the statutes to be vested when there is a person in being who would have an immediate right to the possession of the property upon the ceasing of the intermediate or precedent estate. Id. p. 723, § 13; Real Prop. Law, § 30. William W. and Sarah E. were both living at the death of their father, and had the right to the estates given to them upon the termination of the trust and the happening of the contingencies upon which their respective interests depended. As was said by Judge Finch, in discussing a contingent remainder in Hennessy v. Patterson, 85 N. Y. 91, 103:

"It is true that, to allow of title by descent, there must be something to descend; and what that is, in a case of contingent remainder, which may never vest either in interest or possession, except a mere possibility of acquiring an estate, is a question which the mandate of the statute sufficiently answers, but which may also be answered on principle. John Foley [the remainder-man in that case] had something more than a mere possibility of acquiring an estate. He had the fixed, absolute right to have the estate if the contingency occurred. That right was conferred by the will of the testator, and vested in him at the instant of the latter's death. The devisee held it as a vested right, but such a right as the contingent and uncertain character of the devise created; nevertheless, a fixed and vested right, which the Revised Statutes recognize as an estate, place in the category of expectant estates, and decree shall be

descendible, and which, as we have already seen, was descendible even at common law."

So, also, in Moore v. Littel, 41 N. Y. 66, Judge Woodruff, in writing the prevailing opinion of the court, says, at page 80:

"Without enlarging further, the statute, rejecting technical expressions and phrases heretofore employed, meant by 'person' just what it expresses, and no more. 'When there is a person in being' means when you can point to a human being,—man, woman, or child; and 'who would have an immediate right to the possession of the lands upon the ceasing of the precedent estate,' means that if you can point to a man, woman, or child who, if the life estate should now cease, would, eo instanti et ipso facto, have an immediate right of possession, then the remainder is vested, and, by necessary consequence, all the contingencies which may operate to defeat the right of possession are to operate, and only to operate, as conditions subsequent."

And again, on page 84, he says:

" 'Expectant future estates,' as defined in the statute, do expressly include all remainders, whether vested or contingent. Not only so, the expectant future estates of which the article treats are declared to be 'contingent, while the person to whom, or the event upon which, they are limited to take effect remains uncertain.' And, notwithstanding the uncertainty in the person who may in the future be entitled thereto, the expectancy or estate is declared to be a 'remainder,' and 'it may be created and transferred by that name.' Nothing can more clearly declare, therefore, that a remainder, which is contingent because the person to whom it is limited is uncertain, is an expectant estate. And thereupon the statute declares that expectant estates are descendible, devisable, and alienable. Instead of perpetuating, this abrogates, all distinctions, and gives to all expectant estates, of whatsoever description, and whether vested or contingent, and whether contingent upon an event which may never happen, or by reason of uncertainty in the person, the character or quality of alienability."

That future estates may vest on the death of the testator, notwithstanding such estates are of the character termed "contingent remainders," has also been held in other cases. See Ham v. Van Orden, 84 N. Y. 257, 270; Kenyon v. See, 94 N. Y. 563.

It will be seen, also, in connection with this subject, that there is no provision in the will requiring that William W. and Sarah E. should survive the happening of the contingencies upon which their estates were limited, as a condition of the same taking effect.

If I have interpreted this will aright, in the light of the statutes and the authorities referred to, upon the death of William W. intestate his share passed to his heirs at law and next of kin, under the statutes of distribution and descent, and on the death of Sarah E. her share passed to those entitled thereto under the provisions of her will. The share of William W. and Sarah E. was each an undivided one-half as tenants in common, and not as joint tenants, not only as to the real property, but as to the personal property. 1 Rev. St. p. 727, § 44; Real Prop. Law, § 56; Mills v. Husson, 140 N. Y. 99, 104, 35 N. E. 422; Bank v. Sherwood, 162 N. Y. 310, 319, 56 N. E. 834. Under the view I have taken, there has been no intestacy as to the trust estate, and the widow can take no part of it. I need not discuss the question, therefore, as to whether the acceptance by the wife of the provision in the third item of the will for her benefit was effectual, as has been urged by counsel against her,

under the somewhat ambiguous language there used, to bar her of any interest in the personal estate as well as of her dower.

The further question is presented as to whether or not Charles W. Cornell, as one of the next of kin and heirs at law of his uncle William W., took, on the latter's death intestate, a share in the trust estate, notwithstanding the former was only the life tenant thereof under the will of his grandfather. The share of the uncle, as has been shown, was an undivided one-half in the remainder as a tenant in common thereof with his sister Sarah E., subject, of course, to the trust and to the two contingencies of the executors paying it to Charles in his lifetime and of his dying without issue, and was an estate which was descendible and devisable. Does the fact that Charles had the right only to the income of the trust estate during his lifetime, unless the executors chose to pay him the principal, stand in the way of his transmitting by will any interest which he received as one of the heirs at law and next of kin of his uncle? I think not. I think the estate, such as it was, vested in him and passed under his will. The will of Latham Cornell is silent as to what should become of the share of the trust estate directed to be paid to William W. upon the latter's death without issue. He having died intestate, his estate passed, under the statutes of distribution and of descent, to his next of kin and heirs at law. His interest in this trust estate passed the same as any other of his property, but those to whom it passed took it subject to the same limitations and contingencies which were attached to it in his hands; that is, subject to having the title thereto defeated by the executors paying the principal over to Charles in his lifetime, or by his dying leaving issue surviving. It is true that, unless the executors exercised their discretion to pay the principal to Charles, he could, under the will, receive only the income, but that was because of the limitations put on his interest by the will. It does not seem to me reasonable, however, that this fact alone should stand in the way of his having his proportion of such estate as his uncle had in this fund cast upon him by operation of law, by reason of his uncle's death and intestacy, to the extent, at least, of being able to transmit it by his will. A quite analogous principle was decided in the recent case of Doane v. Trust Co., 160 N. Y. 494, 55 N. E. 296, where it was held that the fact that the next of kin of the testator were life tenants of the income of a fund did not exclude them from participating in the distribution of the principal in case of the testator's intestacy as to the principal.

I think, therefore, that Charles W. Crispell, the sole beneficiary under the will of Charles W. Cornell, can take such interest as the latter received by the death of William W. intestate. It is no answer to say that this is contrary to the intent shown by the will of Latham Cornell to keep his property in the line of his blood, for the reason that that intent was fully carried into effect when the property vested in his son William. The rights of Crispell, who is not of the blood of the testator, does not depend in any way upon anything contained in the will of Latham Cornell, but arises from Charles having willed to him all his estate, which includes what he

received because of his uncle's intestacy. A decision and judgment may be prepared by the attorney for the trustee in harmony with the views here expressed, the judgment to be submitted to me for settlement on two days' notice, at which time the question of costs will be determined.

Ordered accordingly.